UNITED STATES of America, Plaintiff–Appellee,

v.

James J. EWERS, Defendant–Appellant.

No. 94–3438.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1995.

Decided May 9, 1995.

Mitchell Ballweg, Asst. U.S. Atty., Jeffrey Anderson (argued), Office of U.S. Atty., Madison, WI, for U.S.

Thomas G. Halloran, Fox & Fox, Madison, WI (argued), for James J. Ewers.

Before RONEY,* FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

James Ewers is a lawyer gone bad. Apparently unhappy with his status as a Madison, Wisconsin, criminal defense lawyer, Ewers decided to emulate some of his clients, so

* The Honorable Paul H. Roney of the Eleventh Circuit, sitting by designation.

he engaged in selling cocaine. After he was indicted on eight counts of drug- and tax-related crimes, Ewers pled guilty to two counts: maintaining a place for the purpose of distributing and using cocaine (i.e. using his Madison law office for cocaine distribution) and filing a false tax return. In sentencing, the district court departed upward eight levels from the Sentencing Guidelines and sent Ewers to prison for 60 months. Ewers appeals his sentence, and we affirm.

## I. Background

From April to November, 1989, Ewers used his law offices to distribute cocaine. He bought the cocaine from Rodney Rhodes and Ira Williams, beginning with one and two ounce purchases and moving up to buying as much as 1.5 kilograms at a time. Ewers then re-sold the cocaine, including substantial amounts to Virgil Vollmer.

The pre-sentence report (PSR) concluded that Williams and Rhodes delivered a total of five kilograms of cocaine to Ewers. To flesh out the information needed for sentencing, the PSR attached the "Prosecution Version" and the "Defendant's Version" of the offenses. The "Prosecution Version" contained narrations of what various witnesses, including Rhodes, Williams, and Vollmer, would testify to if called. It also included impeachment evidence, such as that Rhodes and Williams had admittedly perjured themselves on more than one occasion and that they had received lighter sentences for cooperation with the government. The "Defendant's Version" was Ewers' own version of the events surrounding the charged crimes: essentially that he bought small quantities for personal use. He suggested no additional potential witnesses.

After initially objecting to the adequacy of the proffered evidence contained in the PSR and its attachments, Ewers withdrew his objection. Ewers' counsel in essence stipulated to the information contained in the PSR and its attachments, stating that "all pertinent

evidence regarding ... amounts of drugs involved and ... the reliability or unreliability of the witnesses" was contained in those documents. Furthermore, Ewers agreed, and still agrees, with the government that the court could properly make its decision on amounts of drugs involved and base any sentencing departure on the basis of the evidence in the PSR and its attachments.

The district court reviewed the evidence submitted and found that the preponderance of the evidence showed that the amount of cocaine involved in Ewers' offense was more than 3.5 kilograms but less than 5 kilograms. The base offense level, as calculated in the PSR, was 16. The district court, finding that the large amount of drugs involved was an aggravating factor not adequately taken into consideration by the 1989 Sentencing Guidelines, *see* 18 U.S.C. § 3553(b), departed upward an additional eight levels. The applicable sentencing range was 51 to 63 months; the court sentenced Ewers to 60 months in prison.

## II. Analysis

■ We apply a three-step approach to review an upward departure: (1) we review *de novo* whether a district court's stated grounds for departure may properly be relied upon to justify the departure; (2) we review for clear error whether the facts that support the grounds for departure actually exist in the case; and (3) we review deferentially whether the degree of departure is appropriate. *United States v. Seacott,* 15 F.3d 1380, 1386 (7th Cir.1994). Ewers does not contest the resolution of the first inquiry: he concedes that drug quantity is a proper ground for departure from a sentence imposed pursuant to the 1989 version of § 2D1.8, under which he was sentenced.[1] *See, e.g., United States v. Feekes,* 929 F.2d 334, 336–38 (7th Cir.1991) (approving similar grounds for departure upward from § 2D1.6).

---

1.  At oral argument, Ewers' counsel conceded his briefed argument that the district court's departure violated the prohibition on *ex post facto* punishments. *See United States v. Davis,* 912 F.2d 1210 (10th Cir.1990) (holding that quantity of drugs was a proper basis for an upward departure from earlier version of § 2D1.8). *Davis* is arguably distinguishable, because it was decided before the 1992 amendments to § 2D1.8 linking offense level to drug quantity, but because Ewers concedes the argument we will not further address it.

■ Ewers does contest the district court's factual determination that his offense involved 3.5 to 5 kilograms of cocaine. He first argues that the district court erred by applying the wrong evidentiary standard to that determination. We have recognized that the preponderance of the evidence standard is generally the correct inquiry for determinations of drug quantity. *See United States v. Schuster,* 948 F.2d 313, 315 (7th Cir.1991). "It is well-settled that where the severity of the punishment is linked to the existence or nonexistence of exculpatory or mitigating facts, the preponderance of the evidence standard satisfies due process." *United States v. Trujillo,* 959 F.2d 1377, 1381 (7th Cir.) (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986)), *cert. denied,* —— U.S. ——, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992).

Ewers wants a higher standard applied to the evidence used in his sentencing. He argues that where the quantity determined is the basis for a significant departure upward from the sentence that would otherwise be imposed, the standard for proof of quantity should instead be the higher standard of clear and convincing evidence. Ewers points us to *United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990), in which the Third Circuit, in a non-drug case, adopted a clear and convincing standard where the district court departed upward from a sentencing range of 27–33 months to impose a sentence of 30 years.

This Circuit has not been sympathetic to the *Kikumura* analysis. *See, e.g., United States v. Masters,* 978 F.2d 281, 286–87 (7th Cir.1992) (disapproving any broad application of the *Kikumura* standard of proof), *cert. denied,* —— U.S. ——, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993). We have clearly stated that if any such enhanced standard of proof would ever be applicable it would be only in the most extreme circumstances, perhaps such circumstances as the sentence in *Kikumura,* which was multiplied by a factor of 10.91. *See Trujillo,* 959 F.2d at 1382 (finding in dicta that the six-level difference between sentence imposed and sentence possible was "not so extreme or dramatic as to invoke *Kikumura* scrutiny."). Extreme circum-

stances are completely absent here. Without the departure, the maximum sentence that Ewers could have received was 27 months. He received 60 months, 2.2 times the maximum sentence without the departure. *See United States v. Porter,* 23 F.3d 1274, 1277–78 (7th Cir.1994) (collecting cases and noting that this Circuit has several times approved a preponderance standard where sentences were increased by a factor greater than three). Furthermore, we have even suggested that the *Kikumura* standard can never apply to drug quantity determinations used in sentencing. *See United States v. Johnson,* 32 F.3d 265, 268 n. 1 (7th Cir.1994) (rejecting *Kikumura* standard of proof because "[t]he amount of drugs attributable to a defendant ... has canonically been a sentencing issue.... [A] sentencing court may validly employ a preponderance of the evidence standard to determine the quantity of drugs...."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995). The district court was correct in applying the preponderance of the evidence standard. There was no error.

■ Ewers further argues that even if the preponderance of the evidence standard was the correct standard, the district court erred in finding that his crime involved 3.5 to 5 kilograms of cocaine, because the evidence supporting that large quantity was not adequately reliable. Ewers does have a due process right to be sentenced on the basis of accurate information. *United States v. Mustread,* 42 F.3d 1097, 1101 (7th Cir.1994). Information may properly be used in sentencing when it has "sufficient indicia of reliability to support its probable accuracy." *United States v. Lueddeke,* 908 F.2d 230, 234 (7th Cir.1990).

Ewers characterizes Rhodes' and Williams' statements as unsupported allegations not tied to any indicia of reliability. Actually, their statements are filled with and surrounded by indicators of reliability. The attachments to the PSR contained detailed testimony. For example, Rhodes would have testified to seven separate large drug transactions, including dates, quantities, delivery locations, and prices paid, in addition to several small drug transactions. Furthermore,

Vollmer admitted to buying substantial quantities of cocaine from Ewers. Other witnesses would have testified to buying various quantities of cocaine from Vollmer. Two of those witnesses would have testified that they drove Vollmer, who was wheelchair-bound, to Ewers' law offices for Vollmer to buy cocaine. This detailed corroboration, as well as Rhodes' and Williams' corroboration of each others' testimony, more than adequately buttresses the drug quantity finding. The court's quantity finding was, in fact, somewhat less than the total amounts to which Rhodes and Williams would have testified, so Ewers has already been given the benefit of any doubt that the district court thought existed.

Ewers repeats untiringly that Rhodes and Williams are bad people: past perjurers who got lower sentences in return for full cooperation with the government. But that does not necessarily make their testimony unreliable; given the nature of the criminal world, testimony about drug amounts is often obtained from less-than-angelic witnesses, many of whom have cut a deal with the government. We would have a difficult time indeed in sentencing if only information from nuns and Boy Scouts were considered reliable. *See United States v. Linnear*, 40 F.3d 215, 220 (7th Cir.1994) (noting that self-interested witnesses are not necessarily unreliable). The government admits that the less-than-savory air of Rhodes and Williams made the cocaine dealing charges that were dropped weaker than they otherwise would have been, and this was one reason that they agreed to drop those charges. But the fact that the government was not entirely sure it could prove beyond a reasonable doubt that Ewers dealt large amounts of cocaine and therefore made the strategic choice to plea-bargain those counts does not mean that the same evidence is not enough to satisfy the lower burden of proof of preponderance of the evidence. It is, in fact, more than adequate to satisfy that burden of proof.

The district court correctly applied the right standard to the information before it and rationally determined that 3.5 to 5 kilograms of cocaine were involved. Ewers had more than adequate opportunity to rebut the evidence against him. He is simply disappointed that the district court disbelieved his story that he had bought only small quantities of cocaine for his personal use. We see no error.

■ Ewers also argues that even if 3.5 to 5 kilograms of cocaine were involved, the amount of the departure was unreasonable. To be reasonable, a district court's departures must be linked to the structure of the guidelines. *United States v. Sarna*, 28 F.3d 657, 663 (7th Cir.1994); *United States v. Thomas*, 930 F.2d 526, 530 (7th Cir.), *cert. denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). Within that constraint, however, we give deference to the district court's determination. *See Seacott*, 15 F.3d at 1386.

The district court's determination fit within the current Guidelines structure. In 1989, § 2D1.8 did not vary the sentence depending on the quantity of drugs involved. In 1992, § 2D1.8 was amended to tie sentences to the quantity of drugs, as is done for most drug-related crimes. *See* U.S.S.G., Appendix C, amend. 448. The district court noted that, in 1989, drug quantity was a factor not taken adequately into account by the Guidelines, and the court therefore departed upward eight levels to reflect the large quantity of drugs involved. The district court's determination linked the departure to the current Guidelines structure, an entirely appropriate measure. *See Feekes*, 929 F.2d at 337–38 (approving a similar six-level upward departure under § 2D1.6 as reasonable). Under the amended § 2D1.8, Ewers would have had an offense level of 27 and received a sentence of 70–87 months. The judge's departure gave him an offense level of 24 and a sentence of 60 months. Giving the district court proper deference, we hold the departure was reasonable. We AFFIRM the sentence of Ewers.