**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tina M. MINER, Defendant–Appellant.**

No. 97–1741.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1997.

Decided Oct. 14, 1997.

---

Timothy M. O'Shea (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Keith J. Peterson (argued), Superior, WI, for Defendant–Appellant.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

This appeal arises from defendant Tina M. Miner's conviction for perjury. Miner pled guilty to perjury under 18 U.S.C. § 1623(a) after being indicted for submitting false testimony to a grand jury regarding a cocaine distribution ring with which she was associated. Miner was sentenced to 24 months in prison and a three year term of supervised release. Miner now appeals her sentence, arguing that (1) the district court should have applied the clear and convincing standard of proof in assessing the facts below; (2) the government failed to meet its burden of proof in establishing the amount of cocaine for which she was responsible; and (3) she was prejudiced by a pre-indictment delay. For the reasons set forth below, we affirm the sentence of the district court.

## BACKGROUND

Tina Miner's conviction for perjury under 18 U.S.C. § 1623(a) arose from her involvement in a drug trafficking conspiracy in Douglas County, Wisconsin during the time period between late 1989 and April 1991. Ms. Miner acted as a fourth-tier cocaine dealer to a drug conspiracy supplied by a man named Derek Crenshaw from San Francisco. Mr. Crenshaw sent, via United Parcel Service, at least 14 packages of a half or full kilogram of cocaine to William Patrick in Superior, Wisconsin. William Patrick and one of his distributors, John Marro, would "cut" the cocaine by adding Inositol, and then weigh the cocaine and divide it into one ounce quantities for distribution. The addition of Inositol, a non-drug substance with the same texture and color as cocaine, increased the weight and thus the profit margin of the cocaine.

Marro purchased five or six ounces from each shipment Crenshaw sent to Patrick. Marro would "cut" in additional Inositol to the cocaine and repackage the cocaine into "eight-balls," or one-eighth of an ounce measurements.[1] Tina Miner, Marro's sister-in-law, was Marro's biggest purchaser. Miner purchased four eight-balls of cocaine out of every ounce of cocaine Marro purchased from Patrick, or one half of the cocaine Marro sold. Miner also occasionally purchased cocaine from other third-tier dealers of the conspiracy. She sold the cocaine out of her apartment and at local Superior, Wisconsin area bars.

The cocaine distribution ring became the subject of a law enforcement investigation, and on October 23, 1991, Tina Miner (then Tina Lyons) appeared before a federal grand jury in Madison, Wisconsin. Miner was granted immunity in exchange for her testimony. During her testimony, Miner freely admitted distributing cocaine and purchasing it from William Patrick. However, Miner denied any involvement with John Marro. Specifically, Miner testified to the following:

Q: Did you ever get cocaine from Mr. Marro?

A: No.

Q: Does Mr. Marro use drugs?

A: I don't know.

Q: But you're certain that you never got drugs from him?

A: Yes.

Q: And the answer—the answer is you're certain, but the answer is also you did not get any drugs from Marro, is that correct?

A: No, I didn't get anything from Marro.

Also testifying before the grand jury was Miner's then future husband, Mike Miner. Mike Miner testified that Tina had sold cocaine obtained from John Marro. Additionally, some time later, on April 12 and 25, 1995, John Marro gave a detailed statement to the FBI implicating Tina Miner.

On October 10, 1995, Tina Miner was notified, via a hand-delivered target letter from Assistant United States Attorney Jeff Anderson, that the United States believed she had perjured herself before the grand jury on October 23, 1991. Miner requested and was appointed counsel on December 19, 1995, and her attorney commenced plea negotiations with the government on her behalf. The plea negotiations culminated in an

---

1. One ounce of cocaine equals 28.35 grams. An "eight-ball" is one-eighth of an ounce, or 3.54 grams.

information charging Miner with perjury before the grand jury. The information was filed September 2, 1996, just prior to the running of the statute of limitations. A guilty plea hearing was scheduled for September 24, 1996. Miner, however, changed her mind, and the hearing was canceled.

Despite counsel for Miner and the government's continued efforts to reach a plea agreement, the negotiations failed to produce an accord, and the matter was submitted to the grand jury for consideration. The grand jury returned a one count indictment charging Miner with perjury before a grand jury in violation of 18 U.S.C. § 1623(a).

Miner moved unsuccessfully to dismiss the charge based upon prejudicial pre-indictment delay. Her motion was dismissed after Magistrate Judge Stephen L. Crocker found that Miner could not show prejudice from the delay and that no unreasonable delay occurred. Miner did not object to Magistrate Judge Crocker's findings, which were subsequently adopted by Judge John C. Shabaz. Accordingly, Judge Shabaz denied Miner's motion to dismiss based upon prejudicial pre-indictment delay.

On January 9, 1997, Tina Miner pled guilty before Judge Shabaz to the one count indictment. The presentence report was prepared using the November 1, 1995 Guideline Manual. Sentencing was held March 20, 1997. Both John Marro and Tina Miner testified at the sentencing hearing.[2] Based on the information and testimony provided, Judge Shabaz found that: (1) Crenshaw sent 14 packages of cocaine to William Patrick; (2) out of each package, Marro received, on average, five ounces of cocaine; (3) Miner received, on average, four eight-balls out of each ounce of Marro's cocaine; and (4) Miner sold cocaine for one year of the eighteen month conspiracy period. Basing Miner's relevant conduct on the amount of cocaine she received from Marro, Judge Shabaz then subtracted one-third to represent the one year period of time Miner sold cocaine. The court concluded that "by a preponderance of the evidence the amount of cocaine involved are the grams of 522 to 660." Miner's cocaine purchases from Patrick and other third-tier distributors

were not considered in arriving at her sentence. Based on the amount of cocaine involved, Miner's base offense level was 26. Judge Shabaz subtracted six levels based on the dictates of the accessory after the fact guideline (§ 2X3.1), and subtracted three levels for Miner's acceptance of responsibility. The total offense level was 17, with a criminal history category of I, mandating a guideline range for purposes of imprisonment at 24 to 30 months. Judge Shabaz sentenced Miner to 24 months in prison and a three year term of supervised release. Miner appeals.

On appeal, Miner argues for the first time that the district court was plainly erroneous in applying the preponderance of the evidence standard to factual determinations at sentencing rather than the clear and convincing evidence standard. Miner also argues that even under the preponderance of the evidence standard, the government failed to meet its burden of proof in establishing the amount of cocaine with which she was involved. Finally, Miner argues that she was prejudiced by the government's delay in indicting her.

ANALYSIS

A. *Burden of Proof at Sentencing*

■ On appeal, Miner argues that the higher burden of proof standard of clear and convincing evidence should have been applied at sentencing because the factual determinations of her relevant conduct increased the severity of her sentence. Specifically, the relevant conduct of which Miner complains is the amount of cocaine for which she was held responsible. Miner is incorrect that a higher standard of proof should attach to sentencing determinations. This Court has repeatedly upheld the use of the preponderance of the evidence standard when considering sentencing factors. *United States v. Walls*, 80 F.3d 238, 241 (7th Cir.1996); *United States v. Ewers*, 54 F.3d 419, 421 (7th Cir.1995); *United States v. Corbin*, 998 F.2d 1377, 1387–88 (7th Cir.1993). *See also McMillan v. Pennsylvania*, 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986) (approving

---

2. Miner's husband, Mike, died of a cocaine overdose on June 15, 1996.

preponderance of the evidence standard for determining sentencing issues).

■ This Court addressed Miner's very argument in *United States v. Ewers*. *Ewers*, 54 F.3d at 421. In Ewers the defendant argued that the clear and convincing standard should be applied to sentencing determinations because the quantity of drugs involved determines the basis for a significant upward departure. *Id.* We rejected the defendant's argument, finding that "the preponderance of the evidence standard is generally the correct inquiry for determinations of drug quantity." *Id.* (citing *United States v. Schuster*, 948 F.2d 313, 315 (7th Cir.1991)). We depart from this standard only in the most extreme of circumstances. *Id.*; *United States v. Trujillo*, 959 F.2d 1377, 1382 (7th Cir.1992).

Like the defendant in *Ewers*, defendant Miner refers us to *United States v. Kikumura*, 918 F.2d 1084 (3d Cir.1990), as an example of extreme circumstances where a court applied a higher burden of proof at sentencing. In *Kikumura* the Third Circuit adopted a clear and convincing standard when the district court departed upward from a sentencing range of 27 to 33 months to impose a sentence of 30 years. *Kikumura* involved a defendant who manufactured three lethal home-made bombs in preparation for a major terrorist bombing on American soil. *Kikumura*, 918 F.2d at 1089. The district court departed upward and imposed a sentence over ten times that suggested by the guidelines because the severity of Kikumura's actions were not taken into account by the applicable guidelines. *Id.* The Third Circuit held that the appropriate inquiry to apply in reviewing such a tremendous upward departure is the clear and convincing standard. *Id.* at 1101–02.

This case hardly presents the extreme circumstances evident in *Kikumura*. Not only was there no upward departure here, but in fact Miner's sentence was much lower than it could have been. Judge Shabaz sentenced Miner based on the amount of drugs she sold for Marro only; he completely excluded any reference to the drugs Miner admittedly sold for Patrick and other third-tier distributors. Additionally, Judge Shabaz departed down-

ward for Miner's acceptance of responsibility, and at defendant's request subtracted one-third from the total amount of drugs involved to represent the time for which she sold cocaine. Finally, Judge Shabaz sentenced Miner to the lowest time in prison from the guideline range, 24 months out of an imprisonment range of 24 to 30 months.

As we have stated before, "[t]his Circuit has not been sympathetic to the *Kikumura* analysis." *Ewers*, 54 F.3d at 421. Furthermore, we have suggested that the *Kikumura* standard can never apply to drug quantity determinations used in sentencing. *Ewers*, 54 F.3d at 421; *United States v. Johnson*, 32 F.3d 265, 268 n. 1 (7th Cir.1994) (rejecting the *Kikumura* increased standard of proof because "[t]he amount of drugs attributable to a defendant … has canonically been a sentencing issue…. [A] sentencing court may validly employ a preponderance of the evidence standard to determine the quantity of drugs involved in a conspiracy"), *cert. denied*, 513 U.S. 1182, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995); *Schuster*, 948 F.2d at 315 ("This Court has consistently held that the quantity of drugs involved in a narcotics case does not constitute a substantive element of the drug offense."). The district court was therefore correct in applying a preponderance of the evidence standard.

■ Miner next argues that even if the preponderance of the evidence inquiry was the correct standard, the district court erred in finding that she should be held responsible for 522 to 660 grams of cocaine because the evidence supporting the amount of cocaine attributed to Miner was unreliable. In essence, Miner is refuting the district court's credibility determinations and estimates concerning the amount of cocaine she received from Marro.

■■ We review a district court's determination of the quantity of drugs included as relevant conduct for clear error. *United States v. Edwards*, 115 F.3d 1322, 1325 (7th Cir.1997) (citing cases). We will reverse the district court's calculation of the quantity of drugs involved only if we have a "firm and definite conviction that a mistake has been

made." *United States v. Corral–Ibarra,* 25 F.3d 430, 437 (7th Cir.1994).

We find that the district court acted reasonably in determining that Miner was involved with 522 to 660 grams of cocaine. The district court heard testimony at sentencing from John Marro and Tina Miner and judged the credibility of both witnesses first hand. We do not challenge the district court's ability to hear and judge the credibility of witnesses. *United States v. Golden,* 102 F.3d 936, 945 (7th Cir.1996). "We will not reweigh evidence and evaluate the credibility of witnesses because these are 'tasks that lie outside our province.' " *Id.* (quoting *United States v. Moutry,* 46 F.3d 598, 603 (7th Cir.1995)). "We will instead leave the credibility judgment to the 'sound discretion of the district court, which has the advantage of having observed the demeanor of the witnesses as they testified.' " *Id.* (quoting *United States v. Campbell,* 985 F.2d 341, 347 (7th Cir.1993)). *See also United States v. Mumford,* 25 F.3d 461, 465 (7th Cir.1994) ("The district court is to base its determination upon the evidence in the record and upon its own credibility evaluations. These credibility evaluations will be given utmost deference."); 18 U.S.C. § 3742(e) (in reviewing a sentence imposed under the guidelines, "the court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.")

The district court was entirely within its province in finding Miner's relevant conduct to include between 522 and 660 grams of cocaine. As discussed above, Judge Shabaz was conservative in his determination of the amount of cocaine with which Miner was involved. Furthermore, Miner's argument that Marro's testimony at sentencing was unbelievable is without merit. The court was entitled to believe Marro's testimony, and its reliance on Marro's estimate of drug quantities, even without Miner's additional testimony, was not improper. *United States v. James,* 113 F.3d 721, 730–31 (7th Cir.1997); *United States v. Duarte,* 950 F.2d 1255, 1265 (7th Cir.1991) (as long as "nebulous eyeballing" is avoided, "factual determinations un-

der the Guidelines need not emulate the precision of Newtonian physics"). Information may properly be used in sentencing when it has "sufficient indicia of reliability to support its probable accuracy." *Ewers,* 54 F.3d at 421 (quoting *United States v. Lueddeke,* 908 F.2d 230, 234 (7th Cir.1990)). We find that the testimony used at sentencing was sufficiently reliable to satisfy the preponderance of the evidence standard.

**B.** *Pre-Indictment Delay*

Finally, Miner contends that she was severely prejudiced by the government's delay in indicting her, and that the district court erred in refusing to grant her motion to dismiss based on prejudicial pre-indictment delay. Miner's argument must fail, as the record is devoid of any prejudice occasioned by the delay.

 To establish a claim for pre-indictment delay, a defendant must prove that "the delay caused actual and substantial prejudice to his fair trial rights," and "that the government delayed indictment to gain a tactical advantage or some other impermissible reason." *United States v. Sowa,* 34 F.3d 447, 450 (7th Cir.1994) (citing *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971)). A defendant must show more than the mere possibility that the delay was prejudicial. "[T]he prejudice must be concrete and substantial; a defendant is not deprived of due process if he is 'only somewhat prejudiced by the lapse of time.' " *United States v. Smith,* 80 F.3d 1188, 1192 (7th Cir.1996) (quoting *United States v. Canoy,* 38 F.3d 893, 902 (7th Cir. 1994) (internal citation omitted)). We review a district court's decision to deny a motion to dismiss for prosecutorial delay for abuse of discretion. *Id.*

 As Miner states in her brief, the government possessed all of the information necessary to support an indictment by May of 1995. In October of 1995, Miner received a target letter from the United States Attorney's Office, informing her that the United States believed she had perjured herself in her grand jury testimony on October 23, 1991. A five month delay, standing alone, is not enough to warrant dismissal. Miner has

failed to allege any specific prejudice which she suffered as a result of this delay, and we fail to see any in the record below. Her only allegation of prejudice is the "faded memories" of witnesses due to the passage of time and the death of her husband. We find this claim insufficient to establish prejudice. *United States v. Baker*, 40 F.3d 154, 158 (7th Cir.1994) ("vague allegations of faded memory" do not establish prejudice). Magistrate Judge Crocker's findings clearly indicate the absence of prejudice:

> Here, Miner has pointed to no actual prejudice of any sort that might begin to meet her preliminary evidentiary burden. The only concrete fact she can point to is the death of her husband following her receipt of the government's target letter. Tragic as this may be, it does not show prejudice. Mike Miner's previous statements *inculpated* Tina Miner. If he had had other evidence to provide, Miner was in a position to know this and to obtain that evidence from her husband prior to his death.

> More to the point, even if Miner's recollection of events has faded, her testimony to the grand jury-which is the basis of this prosecution—is commemorated verbatim in a transcript of the proceedings. All that has changed since that statement is that other witnesses have come forward to tell the government that Miner had in fact received large quantities of cocaine from John Marro. The *coup de grace* was Marro's own statement, provided to the government in 1995.

(emphasis in original).

Furthermore, Miner presented no evidence that the government's delay, assuming there was one, was a purposeful attempt to take advantage of or prejudice her. Magistrate Judge Crocker found that:

> the government did not obtain its best evidence of Miner's alleged perjury until Marro provided his statement [in April] 1995. As the government explains in its brief, from that point forward, the government proceeded with all due haste in attempting to resolve this case.

Accordingly, we agree with the district court and find that there was no abuse of discretion in denying Miner's motion to dismiss based on preindictment delay.

## CONCLUSION

For the reasons stated above, we AFFIRM the sentence of the district court.