**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rick RUNNELS, Defendant–Appellant.**

**No. 95–2974.**

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1996.

Decided Aug. 21, 1996.

Barry Rand Elden, Chief of Appeals, Scott Levine (argued), Office of the U.S. Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff-Appellee.

Daniel J. Hesler (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant-Appellant.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Rick Runnels was a crook. Unfortunately, he was also a cop. While in uniform and on duty, he and his partner, Leonard Kurz, stole money and property from a variety of businesses and individuals within the city of Chicago. A jury convicted Runnels on eight counts including robbery, conspiracy to commit robbery, and various substantive civil rights crimes. 18 U.S.C. §§ 2, 241, 242, and 1951. Runnels challenges his conviction on two grounds: 1) that the district court erred in admitting evidence of a prior threat Runnels directed at a victim of the crimes; and 2) that the evidence was insufficient to sustain the jury verdicts on two of the eight counts. We affirm.

## Background

The offenses leading to Runnels' conviction occurred in three separate incidents during 1988. The first took place April 10, at the El Secreto Escondido Tavern. Runnels, Kurz, and two other uniformed officers went to the tavern, ostensibly to check its liquor license. With one officer near the door and another in the middle of the room, Runnels positioned himself behind the bar. Kurz, meanwhile, proceeded to the two bedroom apartment at the back of the tavern. Esther Cruz, the tavern owner who lived in the apartment, followed Kurz as he entered her residence. Without either a warrant or Cruz' consent, Kurz began to search the apartment. Kurz opened drawers and closets in the kitchen and looked under cushions and mattresses in Cruz' bedroom. Upon request, Cruz produced the unloaded gun that she kept in her apartment, along with a package of bullets and her valid Illinois Firearm Owner's Identification card. When Cruz produced the tavern's framed liquor license, Kurz threw it to the floor and stomped on it, breaking the

glass. Kurz also discovered a sealed envelope containing $1,900 in cash. Despite Cruz' pleas, Kurz put the envelope into his pocket and returned to the tavern.

One witness testified that during the search, Runnels left the tavern, entered the apartment, and returned a minute later. Cruz also saw Runnels enter the apartment. Upon his return, Runnels and the other two officers searched the area behind the bar, the approximately 66 patrons present, and the rest of the tavern. Runnels was the only officer whom witnesses saw in the area behind the bar. When Cruz checked the area the following day, she realized that an additional $100 in change also was missing. Runnels was present when Cruz came out of the apartment in tears screaming that Kurz had taken her money. After all of the patrons left, Runnels and Kurz arrested Cruz. Despite all of the witnesses' testimony to the contrary, Runnels' arrest report states that Cruz took the firearm from behind the bar, proceeded to the back of the tavern, and threw the weapon to the floor. That same arrest report failed to mention either the $1,900 in the sealed envelope or the $100 in change, nor was any money inventoried.

The second incident occurred in July, when Kurz and Runnels were investigating one Victor DeJesus, a suspected cocaine and heroin dealer. The relationship between Runnels and DeJesus dated back at least to 1982, when Runnels first arrested DeJesus. The 1982 charges against DeJesus ultimately were dismissed, and Runnels threatened DeJesus outside the courtroom immediately following the dismissal. The two had contact with each other on several occasions between 1982 and 1988.

On July 8, Runnels and Kurz went to Victor's Transmission Center to search DeJesus, his employees, and the premises. When asked about a warrant, the two officers replied that they neither had nor needed one. After the search, the officers handcuffed DeJesus, brought him to the police station, took his wallet, and demanded to know where he kept his gun. On the way, with DeJesus handcuffed and in the backseat, Runnels and Kurz proceeded to two locations where DeJesus said that he lived—first DeJesus' girl-friend's apartment, and then to his wife's. After searches at both locations failed to produce DeJesus' gun, Runnels told DeJesus that he and Kurz would kill him if he did not provide both his gun and the location of a drug house when they returned the next evening.

The next day, DeJesus filed a harassment complaint with the police department. The department notified Runnels and Kurz of the complaint. On the afternoon of July 16, Runnels and Kurz went to the transmission shop in their squad car. When the officers exited their car, DeJesus started running. Runnels caught up to DeJesus as he attempted to make a phone call, grabbed DeJesus, punched him in the stomach, and handcuffed one of his wrists. During the struggle, DeJesus took $380 in cash from his pocket and threw it to the floor. Kurz picked up the money. Runnels continued the struggle, eventually placing DeJesus in the backseat of the squad car. Kurz drove to a more isolated area nearby, and Runnels pulled DeJesus from the car. Kurz proceeded to beat up DeJesus, causing, among other injuries, a ¾ inch cut inside his lower lip. Kurz drew his revolver in DeJesus' face and threatened to kill him, but when DeJesus' screaming caught the attention of some individuals about 500 yards away, Runnels cautioned Kurz, "Not now." On the way to the police station, Runnels told DeJesus that he would kill him if he said anything about the beating.

Incident number three occurred on November 10, 1988, when Runnels and Kurz went to investigate a reputed drug house at an area car wash. Following roughly the same modus operandi, Kurz began a warrantless search of the premises while Runnels stood watch over the employees. During the "search," Runnels accompanied Kurz to the garage area, made a short radio call, and then reentered the building. Kurz threatened to kill Francisco Figueroa, the night manager, if he did not open the safe. After Kurz went upstairs, Figueroa activated the silent alarm button. Two other uniformed officers responded to the alarm, but Runnels assured them that he and Kurz had the situation under control, and they left. After Runnels and Kurz left, Figueroa went

to find the owner of the car wash, Juan Martir, Jr. Martir observed that $4,600 in cash—one $2,000 bundle and one $2,600 bundle—had been taken from the safe and that a portable telephone also was missing. Several days after the robbery, Pamela Runnels, at the time Rick Runnels' wife, overheard Runnels instruct Kurz to get rid of the phone. Ms. Runnels also found a bundle of money totalling $2,000 in her husband's underwear drawer. The bundle matched the descriptions given by Martir and the car wash receptionist of the missing money.

A grand jury returned an eight-count indictment against Runnels. Of the eight counts, two are relevant to this appeal: Count Two which charged Runnels and Kurz with the robbery of Esther Cruz, the owner of the El Secreto Escondido Tavern, 18 U.S.C. § 1951; and Count Six, which charged the two officers with depriving Cruz of her property without due process, acting under color of state law, 18 U.S.C. § 242. Before Runnels' trial, the government filed a motion in limine pursuant to Federal Rule of Evidence 404(b) to admit Victor DeJesus' testimony about the encounter he had with Runnels outside a courtroom in 1982, after unrelated charges against DeJesus had been dropped. According to DeJesus, Runnels confronted him in the hallway and stated, "I['m] still gonna get you, punk," and that he was "as good as dead." On appeal, Runnels challenges the district court's decision to admit these statements into evidence, as well as the sufficiency of the evidence supporting his conviction on Counts Two and Six of the indictment.

## Analysis

### A. Federal Rule of Evidence 404(b)

█ We review a district court's decision to admit evidence for abuse of discretion. *United States v. Curry*, 79 F.3d 1489, 1494 (7th Cir.1996). Rule 404(b) provides that "other acts" evidence is inadmissible to show that the defendant has a propensity to commit crime and that he acted consistent with that propensity. *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir.1996). Evidence of "other acts" is admissible to establish "motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident." *Id.*; Fed.R.Evid. 404(b).

█ We apply a four-part test in reviewing the admissibility of 404(b) evidence. *United States v. Wilson*, 31 F.3d 510, 514–15 (7th Cir.1994). First, the evidence must be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged. Second, the "other act" must be similar to the charged conduct and be close enough in time to be relevant to the matter at issue. Third, the evidence must be sufficient to support a jury finding that the defendant committed the similar act. Finally, the danger of unfair prejudice must substantially outweigh the probative value of the evidence. *Id.*

█ In this case, steps one, three, and four, are easily met. Runnels' comments evidence a motive as well as an intent to pursue DeJesus, both matters other than Runnels' propensity to commit the charged crime. To establish that Runnels made the statements, the government presented testimony from both DeJesus and his girlfriend, who was standing nearby when Runnels threatened him. With respect to step four, there is no indication that the prejudicial effect of Runnels' statements to DeJesus *substantially outweighed* their probative value. *See United States v. Buckner*, 91 F.3d 34 (7th Cir. 1996).

Runnels' appeal therefore emphasizes the second prong of the test insofar as he contends that because the exchange with DeJesus occurred six years before he committed the offenses in this case, the statement was too remote in time for the district court to admit it into evidence. The time frame does not, however, preclude admissibility. *See, e.g., United States v. Kreiser*, 15 F.3d 635, 640–41 (7th Cir.1994) (seven years); *United States v. Goodapple*, 958 F.2d 1402, 1407 (7th Cir.1992) (five years).

Runnels would have us believe that his comments outside the courtroom were merely the isolated remarks of an aggressive police officer trying to keep drug dealers off the streets. This is one possible explanation. Equally if not more plausible, however, is the possibility that Runnels' comments indicate a

plan or an intent to avenge the dismissal of charges against DeJesus. In this context, the comments also indicate that Runnels had a motive to pursue DeJesus. Moreover, the fact that Runnels and DeJesus encountered each other several times between 1982 and 1988 suggests that Runnels' threats were part and parcel of the ongoing relationship between the two. The district court found the comments to be admissible under Rule 404(b), and so do we.[1]

### B. Sufficiency of the Evidence

■■■ Runnels' second argument is that the evidence at trial was insufficient to sustain his conviction. Sufficiency of the evidence challenges face nearly insurmountable hurdles, and in making this argument, Runnels is aware that he bears a heavy burden. *See United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). We consider the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *United States v. Strang*, 80 F.3d 1214, 1219 (7th Cir.1996).

Section 1951, which proscribes robbery, defines the offense as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). Section 241 similarly prohibits two or more persons from conspiring "to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or the laws of the United States." 18 U.S.C. § 241. The crux of Runnels' claim is that the evidence was sufficient to convict Kurz, but insufficient to show that

Runnels knew of Kurz' criminal activity against Esther Cruz. To this end, he argues that Kurz robbed Cruz in the back apartment while Runnels remained inside the tavern. The government introduced evidence that Runnels left the bar area and entered the apartment. The government also introduced a photograph of the tavern from which it is reasonable to infer that Runnels would have heard all of the commotion when Kurz left the apartment, including Cruz' screaming about Kurz taking her money. And, if that were not enough, the fabricated arrest report that Runnels filed, along with his and Kurz' collective failure to inventory any of the money that they took, suggests that Runnels knew what had occurred. Taken as a whole, this evidence more than amply supports Runnels' convictions on Counts Two and Six.

### Conclusion

For the foregoing reasons, Runnels' conviction is

Affirmed.

---

1. Because we find that DeJesus' testimony was admissible under Rule 404(b), we need not reach the government's second argument that the testimony could have been admitted as "inextricably intertwined" with the charged offense. *See United States v. Akinrinade*, 61 F.3d 1279, 1285 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 541, —— L.Ed.2d —— (1995).