165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Erick Cornell CLAY, Defendant-Appellant.
 No. 98-1783.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 9, 1998.
Decided Nov. 23, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 3:97-cr-46RM. Robert L. Miller, Jr., Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. ILANA DIAMOND ROVNER, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Erick Cornell Clay appeals his jury convictions of one count of arson, 18 U.S.C. § 844(i), and one count of distribution of crack cocaine, 21 U S C § 841(a)(1) He asserts that the Government failed to present sufficient evidence to convict him on either count, and that the trial judge improperly admitted "other crimes" evidence We affirm.
 
 
 2
 The Fulkerson family, including sons Gary and Joshua, lived in a rented two-story house at 527 East Haney Street in South Bend, Indiana In the beginning of the summer of 1996, Tammy Sue Herring ("Herring") rented a room in the house and lived with the Fulkersons. Appellant Clay frequently visited the house Beyond serving as a home for the Fulkersons and their tenant, 527 East Haney Street was the site of drug use and distribution At the house, Clay frequently sold crack cocaine to Herring and others
 
 
 3
 In the early morning on October 18, 1996, a fire erupted at 527 East Haney Street. All of the Fulkersons had moved out of the house the day before except for Joshua who, along with acquaintances "Natural" and Nikki, remained behind to finish packing. Joshua went to bed around 11:30 p.m. He was awakened by Natural, who said that Clay was in the house and was trying to set the house on fire. When Joshua awoke he witnessed Clay in the dining room trying to set his own dog on fire with a lighted piece of paper. When Joshua, Natural, and Nikki told Clay not to harm the dog, Clay responded by igniting a couch in the dining room. When Joshua tried to extinguish the fire, Clay threatened to kill him. Joshua poured water on the couch, and Natural chased Clay into a first-floor rear bedroom. Before reaching the bedroom, Clay set fire to a curtain in the living room. Clay barricaded himself in the bedroom and was not seen again. Natural and Joshua then devoted their attentions to the couch and curtain fires, but by the time they had extinguished the fire on the couch, the rear bedroom was in flames. The fire heavily damaged the house at 527 East Haney Street and also killed a dog and one of Herring's kittens.
 
 
 4
 A federal grand jury in Indiana charged Clay with arson and distribution of crack. At trial, Joshua was the only eyewitness to the arson who testified. Although he had positively identified Clay in a photo lineup a few hours after the fire, in court Joshua made a hesitant identification of Clay as the arsonist. The district court, over Clay's objection, also allowed the Government to introduce testimony from Gary and Herring about a confrontation between Clay and Herring shortly before the fire Gary, 12 years old at the time of the fire, testified that approximately two weeks before the fire he had observed Clay pull Herring's arm behind her back while demanding money from her Herring testified that Clay had twisted her arm, but opined that he was not trying to hurt her She explained that the arm-twisting was Clay's warning to her that she ought to repay him $1700 she owed him for the crack cocaine he had given to another man on her supposed promise of payment Clay did not present a defense
 
 
 5
 The jury convicted Clay on both counts The trial judge sentenced him to concurrent 137-month terms of imprisonment and supervised release for three years.
 
 
 6
 On appeal, Clay first challenges the sufficiency of the evidence. As to the arson charge, the Government was resuired to prove beyond a reasonable doubt that Clay: 1) maliciously damaged or destroyed, or attempted to damage or destroy; 2) by means of fire; 3) a building used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. See 18 U.SC 844(i). Clay does not dispute that the Government proved these elements as to someone Rather, he asserts that Joshua's uncertain in-court identification was insufficient to link him to the crime We disagree
 
 
 7
 Challenges to the sufficiency of evidence "face nearly insurmountable hurdles." United States v. Runnels, 93 F.3d 390, 394 (7th Cir1996.) Evidence is sufficient to uphold a conviction if, when the evidence and the reasonable inferences drawn from it are viewed in a light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt Jackson v. Virginia, 443 U.S. 307, 319 (1979). The critical question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.
 
 
 8
 Joshua, age 14 at the time of the fire, was the only eyewitness who testified at trial. When asked if the arsonist was in the courtroom, Joshua replied, "I don't see him--Oh. Maybe. Him." Joshua pointed at Clay, whom he had not seen since the night of the fire. Joshua confirmed that he had selected Clay from a photo line-up shortly after the fire, and without objection the Government later offered testimony concerning Joshua's positive, out-of-court identification of Clay as the arsonist.
 
 
 9
 The jury as factfinder, not a reviewing court, must "judge the ultimate accuracy" of identifications. Johnson v. McCaughtry, 92 F.3d 585, 597 (7th Cir.1996). Where an in-court identification differs in some way with a prior identification, we inquire only whether the accused had an opportunity to cross-examine the witness making the identifications. See Fed.R.Evid. 801(d)(1)(C), United States v. Owens, 484 U.S. 554 (1988). Thus, even where a witness positively identified the accused out of court but recants at trial, the prior identification is admissible and available for the jury to consider United States v. O'Malley, 796 F.2d 891, 898-99 (7th Cir.1986). Indeed, it is the jury which determines the weight to give the in-court identification. United States v. Briggs, 700 F 2d 408, 413 (7th Cir1983). A less-than-positive identification may still be sufficient and reliable when considered with all other evidence; it is a matter of factual argument for the jury. United States v. Serlin, 538 F.2d 737 (7th Cir.1976).
 
 
 10
 A rational jury could have concluded that Clay set the fire that burned the house at 527 East Haney Street The Government's theory was that Clay set the fire to retaliate for Herring's non-payment of her drug debt Its evidence detailed a relationship between Clay and the residents of 527 East Haney Street, especially Herring The Government presented an eyewitness account of the fire-setting, confirmed that witness's post-fire naming of Clay in two 911 telephone calls, corroborated the witness's testimony by the arson investigator's theories of the fire, and revealed a motive for Clay's actions The evidence also demonstrated that Joshua feared Clay. He testified about his fear when he made the 911 calls to report the fire, afraid that Clay "was going to kill me because he knows I was going to tell" All of this was more than ample to overcome any uncertainty from Joshua's hesitant in-court identification of Clay.
 
 
 11
 As to the drug charge, the Government was required to prove that Clay knowingly or intentionally distributed a controlled substance See U.S.C. § 841(a)(1); United States v. Moutry, 46 F.3d 598, 603 (7th Cir1995) Here again, Clay does not dispute the evidence as to any specific element but instead asserts generally that the Government failed to link him with the alleged drug trafficking According to Clay, "[t]here was no evidence of drug dealing at the time other than Tammy Herring's testimony" Herring's testimony, he adds, was "clearly incredible."
 
 
 12
 We intervene on credibility issues only when testimony is so incredible that no rational trier of fact could believe the witness United States v. Byrd, 771 F.2d 215, 224 (7th Cir.1985); United States v. Saulter, 60 F.3d 270, 275 (7th Cir1995) The jury is the judge of witness credibility, and "attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence." United States v. Griffin, 84 F.3d 912, 927 (7th Cir.), cert. denied, 117 S.Ct. 536 (1996). Even when testimony is completely uncorroborated, we must defer to the jury's judgment. United States v. Alcantar, 83 F.3d 185, 189 (7th Cir.1996). In this case, Herring testified that "at least fifty" times she bought crack cocaine from Clay at 527 East Haney Street. She also testified that Clay sold to others in her presence at that location. Through cross-examination Clay had the opportunity to show that Herring's observations were flawed or unworthy of belief, United States v. Kelly, 14 F.3d 1169, 1175 (7th Cir.1994), but the jury accepted her testimony. Accordingly, in light of our standard of review, we conclude that the evidence was sufficient to allow a jury to conclude that Clay distributed crack cocaine from 527 East Haney Street.
 
 
 13
 Next, Clay argues that the trial court improperly admitted, under Federal Rule of Evidence 404(b), evidence concerning the arm-twisting incident. We review evidentiary rulings for abuse of discretion. United States v. Dominguez, 992 F.2d 678, 680-81 (7th Cir.1993). When reviewing the admission of Rule 404(b) evidence, we accord great deference to the district court's assessment of relative probative value and unfair prejudice because the trial judge was exposed to the evidence firsthand United States v. Koen, 982 F.2d 1101, 1116 (7th Cir.1992). Rule 404(b) evidence is admissible when it is 1) probative of a matter in issue other than the defendant's propensity to commit crime, 2) temporally relevant, 3) sufficient for the jury to find that the defendant committed the similar act, and 4) not substantially outweighed by the danger of unfair prejudice United States v. Smith, 995 F 2d 662, 671 (7th Cir.1993). We regard evidence as unfairly prejudicial only if it will " 'induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." ' United States v. Pulido, 69 F.3d 192, 201 (7th Cir1995) (quoting United States v. Vretta, 790 F.2d 651, 655 (7th Cir.1986)). As even Clay notes, we rarely reverse trial court rulings that result from the exercises of the trial court's discretion to admit certain types of evidence
 
 
 14
 We find no abuse of discretion. The trial judge determined that the evidence was relevant to Clay's motive to commit arson, especially since Clay's confrontation with Herring was close in time to the fire and concerned the drug debt Then he decided that the evidence was sufficient for the jury to find that Clay indeed twisted Herring's arm as described by eyewitnesses to the confrontation Finally, the trial judge determined that the evidence was more probative than it was prejudicial Although Clay declined a limiting instruction when the Rule 404(b) evidence was introduced, the trial judge in his final charge instructed the jury to consider this evidence only for the "limited purpose" of determining whether Clay had a motive to commit the arson We agree with the district court's analysis The disputed testimony revealed Clay's determination to collect a drug debt from Herring, and his motive to retaliate by burning her residence when she did not pay
 
 
 15
 On appeal Clay does not dispute that the incident occurred, or that it was relevant. Rather he asserts only that testimony about twisting someone's arm in front of a child was unfairly prejudicial in a case where the chief eyewitness at trial was also a child. But, the trial judge was mindful of the possibility for unfair prejudice and gave an appropriate limiting instruction. That limiting instruction was sufficient to cure potential prejudice from the Rule 404(b) evidence. See United States v. Rivera, 6 F.3d 431, 442 (7th Cir.1993).
 
 
 16
 Accordingly, the judgment of the jury and of the district court is
 
 
 17
 AFFIRMED.