UNITED STATES of America,
Plaintiff–Appellee,

v.

Van JACKSON, Defendant–Appellant.

No. 01–2332.

United States Court of Appeals,
Seventh Circuit.

Submitted June 20, 2002.

Decided June 20, 2002.

Before WOOD, Jr., COFFEY, and ROVNER, Circuit Judges.

## ORDER

A jury found Van "Veno" Jackson guilty of one count of conspiracy to distribute heroin and three counts of distributing heroin. Among other penalties, the district court sentenced Jackson to 360 months' imprisonment on the conspiracy count and concurrent 240–month terms on the distribution counts. Jackson appeals, but his appointed counsel has filed a motion to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he believes all potential appellate issues are frivolous. Pursuant to Circuit Rule 51(b) Jackson has supplemented the potential issues identified in counsel's facially adequate brief, but we agree with counsel that an appeal in this case would be frivolous. We therefore grant counsel's motion and dismiss the appeal.[1]

■ Counsel initially considers whether Jackson might argue that the district court erred in refusing to suppress evidence obtained through a wiretap on his cell phone, which heroin users called to get their heroin delivered to the various Indianapolis street corners where Jackson and his twenty-some co-conspirators dealt. The first potential theory is that the government failed to establish necessity in its wiretap application. *See* 18 U.S.C. § 2518. But as counsel notes, this case is indistinguishable from *United States v. Adams*, 125 F.3d 586 (7th Cir.1997). As in *Adams*, the application included an exhaustive recital of the government's investigative failures thus far, including its inability to discover the source of Jackson's heroin. In addition, the application depicted the organization's insular and violent character, which made it both dangerous and difficult for a government agent to successfully infiltrate. Finally, the FBI felt that agents would stand out in the neighborhood in which the organization operated, thus making physical surveillance of limited, if not negative, usefulness. Considering the

---

1. Jackson was tried and convicted along with his co-conspirator Macklin Brown, whose counsel has also sought to withdraw pursuant to *Anders*. Jackson's and Brown's cases share many of the same issues, and their counsel's briefs cite to each other. The analysis contained in this order is therefore similar in many respects to that in the order issued in Brown's case.

detail of the government's application in light of *Adams*, we agree with counsel that arguing the wiretaps were not reasonably necessary would be frivolous.

■ Counsel next weighs whether Jackson could pursue the suppression theory that the government violated the wiretap statute by failing to obtain a new intercept authorization immediately after Jackson switched his cellular phone number to a new cellular telephone. The original authorization specified not only the phone number, but also the electronic serial number–a unique number hardwired into every cell phone–of Jackson's original phone. Jackson would have to argue that continuing to tap the phone number after Jackson had it reassigned to the new phone was unlawful because the initial authorization no longer described with particularity the tapped communication facility: Jackson's new cell phone. *See* 18 U.S.C. § 2518(3)(d).

This theory is frivolous unless the district court would have been precluded from authorizing the wiretap if it had known Jackson was going to switch phones. Only if the court would have been so precluded by the dictates of § 2518 is suppression required. *See United States v. Donovan*, 429 U.S. 413, 433–35, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). Counsel directs us to *United States v. Duran*, 189 F.3d 1071 (9th Cir.1999), which is the only circuit precedent on this issue. Confronted with a situation strikingly like the one in this case, the *Duran* court followed *Donovan* in reasoning that "in no meaningful sense can it be said that the presence of that information as to additional [phones] would have precluded judicial authorization of the intercept." *Id.* at 1085–86 (citation omitted). Furthermore, in *Duran* it was clear from the intercept authorization, which allowed continued monitoring of any changed telephone numbers traceable to the original

target number, that the authorizing judge had intended to permit surveillance of any communication traceable to the number in the original order. The court therefore refused to suppress evidence gathered after a suspect had changed his cell phone but not his phone number, even though the authorization was precise as to both phone number and ESN.

Here, as in *Duran*, the court would have acted well within its authority under § 2518 had it included language authorizing the continued monitoring of calls placed to or from Jackson's phone number regardless of changes in the telephone to which it was assigned. In fact, later authorizations did include such authorization. And the original authorization contained language–almost exactly the same language as in *Duran* –evidencing the judge's intent to allow continued interception of any communications traceable to the original target number. The novelty of the question in this circuit does not preclude us from determining that an appeal on this ground would be frivolous, *see United States v. Lopez–Flores*, 275 F.3d 661, 662 (7th Cir.2001), and considering the persuasive force of *Duran* we agree with counsel that pursuing this suppression theory would indeed be so.

■ Before moving beyond the wiretap, counsel considers a final potential suppression theory: that suppression was required because the government did not immediately seal the tapes, as is mandated upon expiration of the wiretap authority. *See* 18 U.S.C. § 2518(8). That authority ends on the date specified in the intercept order or when surveillance has achieved its objectives, whichever is sooner. *See* 18 U.S.C. § 2518(5). The wiretap's objectives in this case, as described in the authorizing order, included revealing "fully" the identities of Jackson's "confederates." Although an important confederate– Jackson's her-

oin source–was still unknown, the government's last intercept occurred on April 19, 1999, eighteen days before the stated May 7 expiration date. The government sealed the tapes on April 28, 1999. At a suppression hearing the agent in charge of the Jackson investigation explained that he ceased monitoring the phone because use by targets had declined, though he did not immediately seal the tapes after April 19 because the objectives of the investigation had not been achieved and he still contemplated periodically checking the phone to determine if the conspirators had resumed using it. Counsel concludes that these facts show that the government indeed sealed the tapes before it even needed to, and we agree that arguing otherwise would be frivolous. *See United States v. Wong*, 40 F.3d 1347, 1375–76 (2d Cir.1994) (tapes need not be sealed immediately after last intercept if surveillance objectives of the wiretap have not been accomplished and government contemplates further monitoring to complete the investigation); *United States v. Badalamenti*, 794 F.2d 821, 824–25 (2d Cir.1986) (same).

■ Turning to other potential arguments, counsel considers whether Jackson might argue that the district court erred in dismissing juror Whitfield, who approached court and counsel after voir dire and revealed that his son was in prison on charges he believed were the product of racism. The court thought the revelation evidence of possible bias and the belated disclosure dishonest in light of pointed voir dire questions regarding family members' involvement with police. It therefore exercised its discretion to dismiss juror Whitfield for cause, *see United States v. McAnderson*, 914 F.2d 934, 944 (7th Cir. 1990), and any contention that the court abused that discretion by doing so would be frivolous because Jackson cannot show that the dismissal resulted in an impartial jury or substantially impaired his use of peremptory challenges, *see United States*

*v. Martinez–Salazar*, 528 U.S. 304, 316–17, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). Jackson objected that he exercised his peremptory challenges to assure Whitfield a seat, but he was entitled only to an impartial jury drawn from a fair cross-section of the community, not to have any particular juror hear his case. *Id.; United States v. Phillips*, 239 F.3d 829, 842 (7th Cir.2001).

■ Counsel next weighs whether Jackson could seriously argue that there was insufficient evidence for a rational jury to convict him of conspiracy. The jury heard voluminous evidence implicating Jackson in a long-running conspiracy to distribute heroin in Indianapolis. This evidence included many recorded conversations in which he and co-conspirators discussed drug dealing, testimony from co-conspirators that Jackson ran the operation and that every day for ten months the ring sold between two and ten heroin "balls" (one ball equaled thirty packages of heroin, each package weighing about .15 grams), and testimony from undercover police officers who made controlled buys from members of the conspiracy. As counsel concludes, it would be frivolous to argue that the jury's verdict was unsupported. *See generally United States v. Runnels*, 93 F.3d 390, 394 (7th Cir.1996) (noting that sufficiency–of–the–evidence challenges are almost impossible to win).

■ Counsel also ponders whether to argue that the district court erred in refusing a jury instruction requested by Jackson. There was some suggestion at trial that the government had investigated more than one heroin conspiracy, and then lumped them all together for purposes of the indictment. The defense wanted an instruction that the jury must acquit if the government did not prove the exact conspiracy, and only the exact conspiracy, charged in the indictment. But as counsel notes, the proposed instruction was an in-

correct statement of the law and therefore properly rejected. *See United States v. Wilson*, 134 F.3d 855, 864 (7th Cir.1998). The multiple-conspiracy instruction actually given was derived almost word-for-word from the one we approved in *Wilson*. As counsel concludes, challenging the rejection of Jackson's jury instructions or the one actually given would therefore be frivolous.

■ Turning to sentencing, counsel examines whether Jackson could pursue an *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claim since his guideline range was premised on a heroin quantity in excess of three kilograms, an amount never presented to the jury. But, as counsel recognizes, this argument would be frivolous because for guidelines purposes the sentencing court need only determine drug quantity by a preponderance of the evidence so long as the resulting sentence does not exceed the statutory maximum allowable for the drug quantity found by the jury beyond a reasonable doubt. *See United States v. Westmoreland*, 240 F.3d 618, 631–32 (7th Cir. 2001). Here, the conspiracy count alleges and the jury found beyond a reasonable doubt that Jackson conspired to distribute at least a kilogram of heroin; under 21 U.S.C. § 841(b)(1)(A)(i) he could have been sentenced to life, and instead he received 360 months. *Apprendi* required nothing more.

Counsel last questions whether Jackson could challenge upward adjustments for possession of a gun during the drug conspiracy, U.S.S.G. § 2D1.1(b)(1); a leadership role, U.S.S.G. § 3B1.1; and use of a minor in the conspiracy, U.S.S.G. § 3B1.4. As counsel determines, the record amply supports the first two adjustments, and contesting the increase for use of a minor would be frivolous because Jackson's guideline imprisonment range would have remained at 360 months to life even without the adjustment. *See United States v. Johnson*, 117 F.3d 1010, 1015 (7th Cir. 1997) (finding sentencing error harmless because it could not have affected the district court's sentence selection).

■ We turn now to the potential issues Jackson separately identifies in his Circuit Rule 51(b) response. He first claims that it would not be frivolous to argue that the district court should have granted his motion to suppress evidence obtained pursuant to a search warrant for his apartment. But even were we to agree with Jackson that the warrant issued without probable cause–and we express no opinion on that–this issue is frivolous because the good-faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies. After *Leon*, courts are not required to suppress evidence obtained in objectively reasonable reliance upon a warrant, even if that warrant was improvidently issued. *Id.* Here, the warrant issued after a police affiant informed an Indiana judge of three heroin deals involving Jackson. Two of those deals had occurred almost six months before the warrant, but the third was within the month. An objectively reasonable officer could rely on a warrant issued upon those facts. *See, e.g., United States v. Spry*, 190 F.3d 829, 834 (7th Cir.1999) (objectively reasonable for officers to rely on warrant issued because of prior drug sales); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir.1999) (drug dealers likely to keep evidence in their homes).

■ Jackson next argues that it would be meaningful to appeal the district court's refusal to grant him an in camera hearing on the veracity of confidential informants who helped supply probable cause for the wiretap. But defendants bear the burden of establishing a need for information regarding confidential infor-

mants that outweighs the public interest in keeping informants' identities secret, and Jackson's conclusory representations to the district court that he doubted the existence and veracity of the listed informants were insufficient to carry that burden. *See United States v. Valles,* 41 F.3d 355, 358 (7th Cir.1994).

Jackson also suggests that he could argue that the district court erred at trial by admitting co-conspirators' out-of-court statements. In order for the government to use the co-conspirators statements against Jackson, it had to prove "by a preponderance of the evidence . . . that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement(s) sought to be admitted were made during and in furtherance of the conspiracy." *United States v. Irorere,* 228 F.3d 816, 824 (7th Cir.2000) (internal quotations omitted). As noted above, the government conclusively established the existence of a conspiracy and Jackson's membership in it. The record also reveals that the admitted co-conspirator statements--which concerned heroin prices and sales and conspirators' meetings--were all made during and in furtherance of the conspiracy. This suggested argument would therefore be frivolous.

Jackson's final potential argument, that the district court should not have given an instruction on aiding and abetting liability, is made frivolous by our holding in *United States v. Salazar,* 983 F.2d 778, 782 (7th Cir.1993).

For the aforesaid reasons, we GRANT counsel's motion and DISMISS this appeal.