

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2007

# USA v. Shedrick

Precedential or Non-Precedential: Precedential

Docket No. 04-2329

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Shedrick" (2007). *2007 Decisions*. Paper 1533.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1533

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2329

UNITED STATES

v.

JAMES SHEDRICK,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00523)
District Judge: Honorable Legrome D. Davis

Argued June 1, 2006

Before: AMBRO, FUENTES, and
GREENBERG, Circuit Judges

(Opinion filed: February 28, 2007)

Peter A. Levin, Esquire (Argued)
1927 Hamilton Street
Philadelphia, PA   19130

          Counsel for Appellant

Patrick L. Meehan
   United States Attorney
Robert A. Zauzmer
   Assistant United States Attorney
   Chief of Appeals
Thomas P. Hogan, Jr. (Argued)
   Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA   19106

          Counsel for Appellee

_____


OPINION  OF  THE  COURT

_____


AMBRO, Circuit Judge


     James Shedrick appeals from the District Court's denial of his 28 U.S.C. § 2255 petition for *habeas corpus* alleging ineffective assistance of counsel.  The Government contests our jurisdiction, however, because of an appellate and collateral

2

review waiver contained in a plea agreement signed by Shedrick. We conclude we have jurisdiction over this appeal relating to ineffectiveness of counsel claims. We affirm the District Court's denial of Shedrick's claim that his trial counsel was ineffective for failing to advise him about sentencing matters. We conclude, however, that ineffectiveness of counsel prevented Shedrick from timely appealing his sentence. While typically we would remand this issue to the District Court or require additional briefing, neither is necessary here. As such, we address the claim attacking his sentence on direct appeal. We conclude that claim cannot be sustained, and thus affirm Shedrick's sentence.

## I. Factual and Procedural Background

In the early morning of July 11, 2002, Philadelphia Police Officers Keya Mason, Raymond Rutter, and Joy Gallen-Ruiz, along with Sergeant Beverly Pembrook, were on patrol in Philadelphia's 12th District. Officer Mason responded to a 911 emergency call reporting a man with a gun located at 64th Street and Greenway Avenue. Upon arriving at that address, Officer Mason heard gun shots but did not see anyone in the area.

Sergeant Pembrook also responded immediately to the 911 call and, like Officer Mason, did not find anyone at the scene. After a short time, however, Pembrook observed a man—later identified as Shedrick—standing in the middle of

the intersection holding a large silver revolver in his right hand. Pembrook made a priority radio call for back-up, stating that the suspect was armed and not in custody.

By that time, Mason had joined Pembrook. Officers Rutter and Gallen-Ruiz, who were riding together, also arrived at the scene. Pembrook and Mason stood in front of a police car and attempted to engage Shedrick while Rutter and Gallen-Ruiz began to approach him from covered positions behind parked cars. The officers repeatedly instructed Shedrick to drop the gun, but he refused. He pointed the gun at the sky and attempted to fire three shots. The gun failed to discharge.

The officers repeated their order for Shedrick to drop his gun. He again aimed the gun upward and pulled the trigger three more times. Yet again the gun failed to fire. Shedrick then opened up the cylinder of the revolver, and empty shell casings fell out of the weapon. When this occurred, the police gang-tackled and disarmed him. Officer Rutter called in a report indicating that Shedrick was in custody.

Immediately after Shedrick was detained, the officers were approached by two persons, Li Nguyen and Patricia Edwards. Nguyen and Edwards stated that they had been in a van on their way to work when Shedrick had appeared on the street and started firing shots at their vehicle. One of the bullets struck the front hood of the van. A second bullet penetrated the windshield and traveled directly between Nguyen, who was

4

driving, and Edwards, who was in the front passenger seat. Nguyen and Edwards reported that they went to a police station one block away to report the shooting. When they returned to the spot where the shooting had occurred, they witnessed the police tackling Shedrick.

The police traced the gun in Shedrick's possession, a Smith & Wesson .357 caliber revolver, to an individual named Aki Brickhouse. Brickhouse was charged with, and pled guilty to, transferring the weapon to a convicted felon (Shedrick). He also admitted that Shedrick had been selling crack cocaine on a regular basis from a location in West Philadelphia and had carried the Smith & Wesson while dealing drugs.

Shedrick was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He signed a written agreement with the Government, pleading guilty to that charge and specifically admitting that (1) he possessed the revolver, (2) he had a prior felony record,[1] and (3) the revolver had traveled in interstate commerce. Shedrick vigorously contested, however, any involvement in the van shooting (as described by Nguyen and Edwards) and any drug dealing while

---

[1]Shedrick pled guilty in October 2000 in the Philadelphia Court of Common Pleas to possession with intent to deliver a controlled substance (cocaine) and unlawful possession of an unlicensed firearm.

5

armed with the revolver (as described by Brickhouse).

The plea agreement expressly stated that Shedrick's maximum potential sentence was ten years' imprisonment. It went on to note that the Government was permitted to "make whatever sentencing recommendation as to imprisonment . . . [it] deems appropriate." Indeed, both parties were "free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures."

The agreement also included a provision waiving not only most appeals but also collateral attacks. It stated:

> 10. In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> > a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal

of his sentence.

b.  If the government does not appeal, then notwithstanding the waiver provision set forth in paragraph 10 above, the defendant may file a direct appeal but may raise only claims that:

i.  the defendant's sentence exceeds the statutory maximum; or

ii.  the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.

The District Court conducted a plea hearing in November 2002. During Shedrick's guilty plea colloquy, the Court confirmed and reinforced the terms of the written plea agreement. At the outset of the hearing, the Court stated:

And a plea agreement has been reached and it is recorded in writing and will be filed certainly at the end of this proceeding. But, most importantly, although the plea agreement states

7

all of the agreements and understandings that exist between the defendant, defense counsel, and the Government, it does not recommend a set term of incarceration as binding upon this Court. Ultimately, the appropriate sentence would be left to the exercise of the Court's discretion based upon information presented by both sides and based upon a review of the Sentencing Guidelines.

Later, the Court reiterated that the sentence would be left to its discretion and that there were no "agreements with anyone about what the right sentence should be." *Id.* at 63. Shedrick confirmed this understanding. He also acknowledged that no other agreements existed between himself and the Government except those contained in the written plea agreement. The Court then made clear to Shedrick that the maximum sentence in his case was ten years' incarceration. Shedrick did express some confusion whether the facts alleged in the plea agreement included an admission that he aimed or shot at police officers, prompting the Court to clarify that he had only agreed to plead to the basic facts of possessing the gun as a convicted felon and that any other issues were left to the parties to argue at sentencing.

After Shedrick entered his plea, the Probation Office prepared a presentence report ("PSR"). It calculated Shedrick's base offense level at 20. It then recommended a four-level

enhancement under U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) due to Shedrick's prior felony conviction for a controlled substance offense and a three-level downward adjustment under U.S. Sentencing Guidelines Manual § 3E1.1 for acceptance of responsibility. Those adjustments resulted in an offense level of 21 that, combined with a criminal history category of III, yielded a Sentencing Guidelines range of 46 to 57 months.

Two weeks prior to sentencing, the Government filed a memorandum with the District Court arguing that (1) Shedrick was subject to a four-level enhancement for possessing a firearm in connection with another felony offense (specifically, drug dealing), and (2) the Court should depart upward eight levels from the established Guidelines range because Shedrick had discharged the weapon during the commission of his offense (by shooting at a van occupied by two people). Shedrick objected.

The District Court held a sentencing hearing during which the potential enhancement for possession in connection with another felony offense, as well as the upward departure for shooting at the van, were contested. The Government called two witnesses to provide a factual basis to support the enhancement and departure: Brickhouse and Nguyen.

Brickhouse testified that Shedrick had been selling cocaine on a regular basis and that both Shedrick and his half-

brother, Tarik Robinson, had carried the Smith & Wesson revolver while dealing drugs.

Nguyen testified that he and Patricia Edwards were driving to work in a red van at approximately 5:40 a.m. on the date of Shedrick's arrest, when a black man holding a silver revolver started shooting at them. The Government provided photographs to the District Court showing that bullets struck the left front hood of the van and the mid-windshield, passing between the two passengers. Nguyen recounted going to a police station to report the shooting, returning to where it had occurred, and witnessing the police tackling the man who had shot at the van.[2]

After Brickhouse and Nguyen's testimony, Shedrick testified to his version of events. He admitted that he had the gun in his possession, but denied ever firing it. He also stated that he did not know Brickhouse and had never seen Nguyen prior to the sentencing hearing.

The Government and defense counsel then engaged in extended arguments about the enhancement and departure. The

---

[2]Because Shedrick was wearing a black shirt when arrested, it is notable that Nguyen testified that the shooter had been wearing a white shirt. When confronted by that inconsistency, Nguyen admitted that he had focused on the gun and could have made a mistake about the color of the shooter's shirt.

defense contended that there was insufficient evidence to show that Shedrick either had been dealing drugs or had fired the shots that struck Nguyen's van. Thus, it was the defense's position that Shedrick should receive a sentence within the standard Guidelines range—46 to 57 months.

The Government, on the other hand, maintained that because the evidence demonstrated that Shedrick had carried the gun while dealing drugs (as testified to by Brickhouse) and that Shedrick shot at the van (as testified to by Nguyen), both the four-level enhancement and eight-level upward departure should apply. It recommended to the Court a sentence of 100 months' incarceration.[3]

At the close of the hearing, the District Court found that Brickhouse and Nguyen were credible witnesses, and thus applied the four-level enhancement and eight-level upward departure. Accordingly, the Court sentenced Shedrick to 96 months' incarceration to be followed by three years of supervised release.

Shedrick was appointed counsel by the District Court for purposes of an appeal. On August 18, 2003 (approximately six months after sentencing), counsel filed a motion for enlargement of time to submit a notice of appeal *nunc pro tunc*.

---

[3]Application of both the four-level enhancement and eight-level departure yielded a Guidelines range of 87 to 108 months.

The District Court denied the motion on August 27, 2003, and our Court dismissed the appeal as untimely on November 25, 2003. Shedrick (through counsel) proceeded to file a 28 U.S.C. § 2255 *habeas corpus* petition in the District Court, which was denied. He petitioned *pro se* our Court for a certificate of appealability, which was granted for two issues: "whether counsel was ineffective for failing to advise [Shedrick] of a possible upward departure at sentencing; and whether counsel was ineffective for filing an untimely appeal."[4] Before we reach these issues, however, we address the Government's jurisdictional contention.

## III.   Jurisdiction

According to the Government, the appeal and collateral attack waiver contained in Shedrick's written plea agreement strips our jurisdiction. We disagree. In *United States v. Khattak*, we joined the courts of appeals for ten other circuits and held that "[w]aivers of appeal, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." 273 F.3d 557, 563 (3d Cir. 2001).[5] If a waiver is valid, "we

---

[4]We also appointed Shedrick new counsel to pursue this appeal.

[5]Our decision in *Khattak* leaves the miscarriage-of-justice determination open-ended, depending on various factors identified in *United States v. Teeter*, 257 F.3d 14, 25–26 (1st

have no jurisdiction to consider the merits of [an] appeal." *Id.* However, "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *see Rosado v. Wyman*, 397 U.S. 397, 403 n.2 (1970) (same). Thus, we have jurisdiction to examine the waiver provision of Shedrick's plea agreement to determine its validity and, even if valid, what its terms do and do not allow.

On initial review, it does appear that Shedrick expressly waived his right to appeal and collaterally attack his sentence in paragraph 10 of the plea agreement. However, the agreement goes on to state that an appeal is preserved if any of three conditions occurs. They are, to repeat, (1) a Government appeal, (2) a sentence exceeding the statutory maximum, or (3) an erroneous upward departure from the otherwise applicable Sentencing Guidelines range.

---

Cir. 2001), *e.g.*, how clear and grave an error existed, the effect of that error on the parties, and the extent to which the defendant acquiesced in the error. *Khattak*, 273 F.3d at 563. We noted, however, that the Seventh Circuit Court of Appeals specifically held that ineffective assistance of counsel invalidates waiver-of-appeal provisions. *Id.* at 562 (citing *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999)); *see also Teeter*, 257 F.3d at 25 n.9; *United States v. Hernandez*, 242 F.3d 110, 113–14 (2d Cir. 2001); *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001).

13

It is undisputed that the first two predicates do not apply here; the Government did not appeal, and Shedrick's sentence of 96 months' imprisonment does not exceed the statutory maximum of ten years. Shedrick maintains, however, that the third condition applies, he is entitled to seek a collateral review, and we have jurisdiction over appeals denying § 2255 petitions. Specifically, he argues, *inter alia*, that he was denied the right to appeal the District Court's erroneous upward departure from his otherwise applicable Guidelines range.[6]

The Government, on the other hand, claims that Shedrick "is not arguing that the Court erroneously granted an upward departure, but merely is arguing that counsel was ineffective for (1) allegedly not informing him that the potential for an upward departure existed." Gov't Br. at 28. We disagree here as well. At its essence, Shedrick's argument is that, as a result of trial

---

[6]Shedrick's brief mistakenly lumps together his enhancement and his upward departure. An "enhancement" is an adjustment to the base offense level as specifically provided by the Guidelines, whereas an "upward departure" is a discretionary adjustment to the Guidelines range once calculated. After *United States v. Booker*, 543 U.S. 220 (2005), the difference is now represented in the distinction between steps one and two as set out in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). While Shedrick has a right to appeal the District Court's upward departure under his plea waiver, the literal words of that waiver make clear that he has no concomitant right to appeal an upward enhancement.

counsel's deficient performance, he failed to appeal timely the District Court's upward departure, which he was entitled to appeal under the express terms of the plea agreement waiver. Enforcing a collateral attack waiver where constitutionally deficient lawyering prevented him from a direct appeal permitted by the waiver would result in a miscarriage of justice. Thus, we have jurisdiction to consider any ineffective-assistance-of-counsel issue.

## IV.    Merits

### A. Ineffectiveness of Counsel for Failure to Advise

Shedrick first argues that he received ineffective assistance of counsel during his plea process as a result of counsel's failure to advise him about, *inter alia*, a potential upward departure at sentencing. According to Shedrick, a "fundamental consideration for [him] in determining whether . . . to accept the guilty plea was the length of sentence he could expect to receive."

Under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Shedrick must demonstrate that his attorney's performance was deficient and that he was prejudiced by the deficiency. That is, he must prove that counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the

15

result of the proceeding would have been different." *Id*. at 694.

Shedrick cannot satisfy these requirements. Indeed, we have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted. *See, e.g.*, *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (counsel not ineffective for allegedly promising defendant a sentence of "no more than 71 months" where defendant was advised in open-court colloquy of potential maximum sentence and there were no other promises regarding sentence); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there was no guarantee as to sentence, and that the court could sentence him to the maximum."); *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) (*per curiam*) (holding that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary" where record demonstrates that a proper plea colloquy took place during which defendant acknowledged that he was aware of his maximum potential sentence). As stated in *Mustafa*,

> [w]e recognize that the maximum sentence authorized by law is often so extraordinarily long that few defendants other than "career criminals" plead guilty with the expectation that the

16

maximum sentence applies to them. However, all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.

238 F.3d at 492 n.5.

This case falls squarely within well-established precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion. Shedrick's written, signed agreement stated that (1) he faced a maximum potential sentence of ten years' incarceration; (2) the parties were free to argue any other sentencing issues (explicitly including departures); (3) the District Court retained ultimate discretion over the sentence; and (4) there were no other agreements or promises regarding Shedrick's potential sentence.

The District Court repeated these facts in open court, starting the guilty plea colloquy by confirming with Shedrick that

17

most importantly, although the plea agreement states all of the agreements and understandings that exist [among] the defendant, defense counsel, and the Government, it does not recommend a set term of incarceration as binding upon this Court. Ultimately, the appropriate sentence would be left to the exercise of the Court's discretion based upon information presented by both sides and based upon a review of the Sentencing Guidelines.

It then confirmed that Shedrick (1) had read, signed and fully understood the plea agreement, (2) understood that there were no other promises regarding his potential sentence, and (3) had admitted the facts of the crime. The Court further advised Shedrick that the maximum potential sentence was ten years' incarceration and that it retained full discretion over the ultimate sentence.

Here, any erroneous sentencing information provided by defense counsel was corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated Shedrick's potential sentence. Given this record, it is inconceivable that Shedrick did not know he potentially faced a maximum ten-year prison term. In fact, his allegations before our panel are flatly inconsistent with his written, signed plea agreement as well as his sworn, in-court answers during his plea colloquy. Accordingly, the District Court correctly denied

18

Shedrick's § 2255 motion as to his claim that counsel was ineffective for failing to advise him of the potential for an enhancement or upward departure.[7]

---

[7]With regard to his failure-to-advise argument, Shedrick relies heavily on one case—*Meyers v. Gillis*, 142 F.3d 664 (3d Cir. 1998)—to advance his claim that bad sentencing information provided by a defense lawyer equals ineffective assistance of counsel. *Meyers* involved a *habeas* proceeding from a state court guilty plea. The defendant had pled guilty to second degree murder, which carried a mandatory life sentence with no chance of parole. Nonetheless, the defendant was misinformed by counsel that he would be eligible for parole in seven years. At his guilty plea, the defendant was repeatedly informed that he would become eligible for parole. Incredibly, that advice was never corrected by the prosecutor or the state trial court. We held that Meyer's counsel was ineffective and reversed his life sentence.

*Meyers* is readily distinguishable from the case before us. The former involved review of a state court proceeding lacking a detailed guilty plea agreement and a Rule 11 guilty plea colloquy. More importantly, the trial court in *Meyers* failed to correct the erroneous sentencing information provided on the record by defense counsel. In sharp contrast, the District Court here corrected any alleged misperception by Shedrick about his potential sentence by accurately informing him that his maximum prison sentence was ten years and that the Court had the discretion to sentence him up to that maximum. *See Scarbrough v. Johnson*, 300 F.3d 302, 303–04, 306 (3d Cir. 2002) (distinguishing *Meyers* and finding no error where

19

## B. Ineffectiveness of Counsel for Failure to Appeal

Shedrick's second contention is that his then-counsel was ineffective for failing to file a timely appeal in this case. In resolving this claim, we are guided by the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). There, the Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. Because the question concerned whether counsel's representation was constitutionally defective, the Court held that the two-part *Strickland* test governed its inquiry. *Id*. at 476–77. Applying that standard to the particular facts before it, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.

---

defense counsel misinformed defendant that he was eligible for parole but state court repeatedly and correctly informed defendant that his penalty was an "automatic life sentence" with no chance of parole).

20

Additionally, the Court instructed that courts undertaking this inquiry, as with all ineffective assistance claims, "take into account all the information counsel knew or should have known." *Id*. at 480 (citing *Strickland*, 466 U.S. at 690).

With respect to *Strickland*'s prejudice prong, the Court held that the harmless error inquiry applied and that relief could not be granted unless the defendant "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484. The Court did not identify any determinative factors in this regard, but did stress that "evidence that there were non-frivolous grounds for appeal or that the defendant at issue promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485.

A review of the record reveals that Shedrick "reasonably demonstrated to counsel that he was interested in appealing" by vehemently contesting the factual issues that led to his enhancement and upward departure throughout the District Court proceedings. *See* Gov't Br. at 18 (acknowledging that Shedrick "hotly contested" the factual issues leading to his enhancement and upward departure both prior to and during his sentencing proceedings); *see also* Appellant's App. at 78–79 (demonstrating that Shedrick, during his plea colloquy and prior to pleading guilty, specifically ensured that he was not conceding any involvement in the van shooting incident or any attempt to fire the weapon at police). In this context, Shedrick's

21

counsel had "a constitutionally-imposed duty to consult with" him concerning a possible appeal. *Flores-Ortega*, 528 U.S. at 480; *see id*. at 481 ("We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.").

The Government argues that Shedrick "makes no allegation that he ever directed counsel to [file an appeal]." Gov't Br. at 58. Indeed, Shedrick's *habeas* counsel wrote in his brief to our Court that "[t]he record does not indicate that [trial] counsel had any discussion with [Shedrick] regarding an appeal. It is also unclear whether [Shedrick] specifically asked [his trial counsel] to file an appeal." Appellant's Br. at 17. We are uncertain why such comments were made in light of Shedrick's explicit statement in a letter to the District Court, dated February 26, 2003 (*before* the appeal deadline had passed), that he had asked his trial counsel to file an appeal on his behalf. In this context, Shedrick's trial counsel knew at least one of three things—Shedrick asked that an appeal be filed, he likely would want to appeal, or he was interested in appealing—and yet did not file an appeal.

There is no indication in the record that Shedrick's attorney consulted with him post-sentencing. Indeed, Shedrick expressly stated in letters submitted to the District Court both during and after that period that his trial counsel failed to

22

consult with him during the appeal period. Even if counsel did so, there is little question he was deficient for failing to file an appeal because Shedrick stated on the record that he wished to appeal while that option was available. If counsel did not consult with Shedrick during the appeal period, then he was deficient under *Roe-Ortega* for not doing so. Under these circumstances, it is not necessary for us to remand this case to the District Court for a factual finding that counsel either did or did not consult with Shedrick because counsel was deficient either way.

As it was ineffective assistance of counsel that prevented Shedrick from timely appealing the upward departure—a challenge permitted by his plea waiver—we hold that he is entitled to a direct appeal challenging that departure. Because it has been thoroughly briefed by counsel, we deem it unnecessary to call for further briefing, and thus we turn our attention to the merits of the sentencing.[8]

---

[8]For those concerned that Shedrick gets to appeal because of a technicality that will prove fruitless (see subsection "C" below), we note that whether Shedrick has a substantial likelihood of success on appeal is of no moment here; to satisfy the prejudice prong of *Strickland* in this context, Shedrick must merely establish that his appeal would have been non-frivolous. *Anders v. California*, 386 U.S. 738, 744 (1967) (explaining that an appeal on a matter of law is frivolous only where "[none] of the legal points [is] arguable on their merits"); *Deutsch v. United*

23

### C. *Upward Departure*

As explained above, Shedrick received an eight-level upward departure under U.S. Sentencing Guidelines Manual § 5K2.6 (stating that "[i]f a weapon or dangerous instrumentality was used or possessed in the commission of the offense[,] the court may increase the sentence above the authorized guideline range") for firing a gun at an occupied van. Relying on *United States v. Booker*, 543 U.S. 220 (2005), he argues that he is entitled to re-sentencing because the "District Court exceeded its

---

*States*, 67 F.3d 1080, 1085–86 (3d Cir. 1995) (defining frivolousness in a 28 U.S.C. § 1915(d) case as "of little or no weight, value, or importance; paltry; trumpery; not worthy of serious attention; having no reasonable ground or purpose"); *see also* Robert G. Bone, *Modeling Frivolous Suits*, 145 U. Pa. L. Rev. 519, 530, 533 (1997) (rejecting "low-probability" as a definition of frivolous litigation); Charles M. Yablon, *The Good, the Bad, and the Frivolous Case: An Essay on Probability and Rule 11*, 44 UCLA L. Rev. 65, 67 (1996) (arguing that non-frivolous cases are "long shots that didn't pan out, rather than baseless claims that should never have been brought"). Though we accept Shedrick's appeal and rule against him on the merits, his arguments (as noted below) meet this minimal standard. Moreover, as the Court explained in *Flores-Ortega*, 528 U.S. at 486, "it [would be] unfair to require an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal."

authority, as limited by the Sixth Amendment, by enhancing [his] offense level without the requisite jury determination" and without applying a reasonable-doubt standard. Appellant's Br. at 18.[9]

The question whether a jury needed to find the facts that formed the basis for Shedrick's eight-level departure beyond a reasonable doubt is a question of law we review *de novo*. *United States v. Williams*, 235 F.3d 858, 861 (3d Cir. 2000). The District Court's factual findings are reviewed for clear error. *United States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999).

In *Booker*, the Supreme Court held that facts relevant to the now-advisory Guidelines do not implicate the constitutional right to trial by jury so long as the sentence does not exceed the statutory maximum set by the United States Code (in our case, ten years). 543 U.S. at 259. Thus, the finding of fact at issue here need not have been submitted to a jury. Moreover, our Court has expressly stated that "[a]s before *Booker*, the standard of proof under the guidelines for sentencing facts continues to

---

[9]It does not appear that Shedrick makes the independent argument (rooted solely in the Fifth Amendment) that, if not the jury, then the Judge should have found the enhancement beyond a reasonable doubt. Our analysis of such a claim, however, would mirror what already is set out here. *See United States v. Grier*, No. 05-1698, ___ F.3d ___, 2007 WL 315102, at *1 (3d Cir. Feb. 5, 2007).

be preponderance of the evidence." *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006). As such, the District Court's application of the preponderance-of-the-evidence standard comports with the Sixth Amendment under current case law. *Id.*; *see also Grier*, 2007 WL 315102, at *1–8 (explaining how *Booker*'s remedial opinion facilitates this conclusion).

The evidence presented at the sentencing hearing supports the conclusion that Shedrick fired at the van occupied by Nguyen and Edwards. Although Nguyen misidentified the color of Shedrick's shirt, he testified confidently that Shedrick was the individual who had shot in his direction. Given Shedrick's proximity to Nguyen at the time of the alleged shooting, his concession that he was in possession of a gun when the shooting occurred, and the District Court's ruling that Nguyen's testimony was credible, we cannot conclude that the Court's finding that Shedrick had shot at the van was clearly erroneous. Thus, we affirm Shedrick's sentence.

## V. Conclusion

For the reasons explained above, we have jurisdiction over this appeal relating to ineffectiveness-of-counsel claims. We proceed to affirm the District Court's denial of Shedrick's § 2255 petition concerning the claim that his counsel was ineffective for failing to advise him as to sentencing matters. However, Shedrick has demonstrated that his trial counsel was ineffective under *Roe-Ortega* for failing to afford Shedrick his

26

appeal rights.  We thus reverse the Court's denial of Shedrick's § 2255 petition on this claim.  Because the issue is fully briefed, we consider the merits of Shedrick's claim of error relating to the upward departure of his sentence.  That claim we reject, and thus we affirm his sentence.